IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. JOHNNY LEWIS

**Appeal from the Circuit Court for Warren County**
**No. F-7970     Charles D. Haston, Judge**

---

**No. M2000-02809-CCA-R3-CD - Filed November 16, 2001**

---

The defendant appeals his conviction of violating the motor vehicle habitual offender law. Because we find that his motor vehicle offender status was terminated before he was discovered driving a motor vehicle, we conclude that the convicting evidence was insufficient. We reverse the conviction and dismiss the charge.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Charge Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Dan T. Bryant, McMinnville, Tennessee, for the Appellant, Johnny Lewis.

Paul G. Summers, Attorney General & Reporter; Elizabeth T. Ryan, Assistant Attorney General; and Dale Potter, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On October 30, 1991, the Warren County Circuit Court entered an order declaring the defendant, Johnny Lewis, a motor vehicle habitual offender (MVHO) and prohibiting him from operating a motor vehicle for a period of ten years. *See* Tenn. Code Ann. § 55-10-613 (1997). On January 12, 1999, in response to a petition by the defendant seeking relief from the 1991 order, the court entered an order reflecting that the defendant's "driving privileges should not at this time be restored" but granting the defendant "restrictive privileges of driving a motor vehicle on the roads of Tennessee from his home to his place of employment and back to his home," pending review on April 9, 1999.

On April 9, the court entered two further orders. One recited that the defendant has obtained motor vehicle insurance, has paid his fines for past violations, and has become "qualified to have his driving license reinstated under the provisions of [Tennessee Code Annotated section] 55-10-615, and his license should be reinstated." In that order, the court decreed that the defendant's

license be reinstated "with all privileges of operating a motor vehicle on the highways of the State of Tennessee upon the payment of the fees as required by the rules and laws of the [S]tate of Tennessee for such purposes."

In the second April 9, 1999 order, the lower court recognized that "it will take weeks to file for the restoration of his license and to pay the proper fees and file the order of the restoration of the license under [Code section] 55-10-615" and ordered that the defendant be vested with an interim restrictive driving privilege. The order provides that this "restrictive driving privilege" would continue until May 10, 1999.

On August 16, 1999, a McMinnville police officer arrested the defendant for driving in violation of the motor vehicle habitual offender law. During the defendant's April 26, 2000 jury trial on this charge, the state established that the defendant was driving a motor vehicle on a public road in Warren County. Further, the state established – and the defendant conceded – the validity of the 1991 MVHO order. In the defendant's case in chief, he placed into evidence the three 1999 orders. In rebuttal, the state showed that the defendant had not paid fees to the Department of Safety and had not obtained reinstatement of his driver's license.

After the close of the proof in the case, the defendant moved for an order of dismissal based on the theory that, via the 1999 orders, the trial court had vacated the 1991 MVHO order and had placed the defendant in the position of obtaining a driver's license upon tendering the required fees to the Department of Safety. The state argued that the 1999 orders, via statutory authority, placed terms and conditions upon the termination of the defendant's MVHO status – in particular, that he pay the fees and obtain a license from the Department of Safety, which the defendant had failed to do. The trial court agreed with the state and declared that, as a matter of law, the defendant's MVHO status had not been affected by the 1999 orders.

The court further ruled that the certified copies of the 1999 orders that were placed into evidence should not be submitted to the jury during their deliberations. During deliberations, the jury requested the 1999 orders. The trial court denied the request and informed the jury that the 1999 orders were irrelevant. The defendant moved for an order declaring a mistrial, but the trial court denied the motion.

The jury convicted the defendant of violating the MVHO law, a Class E felony, and following the court's acceptance of the verdict, the defendant moved orally for a judgment of acquittal and for a new trial. On May 12, 2000, the trial court conducted a sentencing hearing, after which it imposed a sentence of two years and eight months to be served in the Tennessee Department of Correction. Because the defendant was a Range II offender with a 35% release eligibility date, the release eligibility date for the sentence as imposed was substantially attained at the time of sentencing by virtue of the allowance of 270 days of pretrial jail credit. The judgment of conviction was entered on June 6, 2000.

On August 29, 2000, the defendant filed a written motion for a new trial, in which he claimed that the trial court erred in ruling that the 1999 orders were irrelevant, in not submitting the exhibit containing the 1999 orders to the jury, despite the jury's request to see the exhibit, in denying a mid-trial interlocutory appeal, and in denying the defendant's post-trial motions for dismissal and judgment of acquittal.

On appeal, the defendant raises these issues and further claims that the trial court erred in denying the mistrial motion and in refusing to submit to the jury the "fact" issue of whether the 1999 orders had terminated the defendant's MVHO status.

Initially, we must hold that this court's review of all of the issues, except for the denial of the motions for dismissal and judgment of acquittal, is waived. The defendant failed to perfect his oral motion for a new trial by reducing it to writing within 30 days of the entry of the judgment of conviction. "A motion for a new trial shall be made in writing, or if made orally in open court shall be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). "This provision is mandatory, and the time for the filing cannot be extended." *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *see* Tenn. R. Crim. P. 45(b). The failure to timely file the motion for new trial "deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion." *Martin*, 940 S.W.2d at 569. Issues which should be raised in a motion for new trial include evidentiary issues, jury instruction complaints, misconduct of jurors, parties or counsel, "or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought." Tenn. R. App. P. 3(e).

On the other hand, it is not necessary to file a motion for a new trial in order to obtain appellate review of a claim that the evidence is insufficient to support the conviction. *See, e.g., State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). Because "[w]e apply the same standard of review both to the trial court's denial of the [a] motion for a judgment of acquittal and to the sufficiency of the evidence underlying the jury's verdict," *State v. Carroll*, 36 S.W.3d 854, 869 (Tenn. Crim. App. 1999), the defendant's appellate claim that the trial court erred in denying his motion for judgment of acquittal effectively raises the issue of sufficiency of the evidence. Thus, this issue is not waived by failing to raise it in a timely motion for new trial, and we now address it.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper,* 29 S.W.3d 1 (Tenn. 2000).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639

S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id.* at 914.

In this case, the sufficiency of the evidence issue is simply a narrow question of law: whether the 1999 orders of the trial court vacated the 1991 MVHO order or, in other words, whether the 1999 orders terminated the defendant's MVHO status prior to August 16, 1999, the date of his "offense" and arrest. For the reasons explained below, we conclude that the 1999 orders did, as a matter of law, terminate the MVHO status. The result is that the defendant was not an MVHO on August 16, 1999, and accordingly, the evidence was insufficient to convict him of violating the MVHO law.

Tennessee Code Annotated section 55-10-613(a) provides that after a court finds that a defendant is a MVHO, it "shall make an order directing that such person shall not operate a motor vehicle on the highways of this state and that such person shall surrender to the court all licenses to operate a motor vehicle . . . ." The clerk shall "forthwith transmit a copy of such order, together with any license or licenses surrendered, to the department of safety." Tenn. Code Ann. § 55-10-613(b) (1998). It is a Class E felony to operate a motor vehicle while the MVHO order "remains in effect." *Id.*, § 55-10-616 (1997).

"In no event shall a license to operate motor vehicles in this state be issued to an habitual offender for a period of three (3) years from the entry date of the order . . . finding such person to be an habitual offender." Tenn. Code Ann. § 55-10-615(a) (Supp. 2000). However, after the expiration of three years, the habitual offender may petition the court "for restoration of the privilege to operate a motor vehicle." *Id.*, § 55-10-615(b). In this event, if the habitual offender has met all financial responsibility requirements, *id.* § 55-10-615(a), and for good cause shown, the court may "restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe. . . ." *Id.*, 55-10-615(b).

The Tennessee Department of Safety is charged with the responsibility of issuing driver's licenses. Tenn. Code Ann. §§ 55-50-302 (1998), -331 (Supp. 2000). Among the persons who are ineligible for licenses are those who are required to furnish proof of financial responsibility but have failed to do so and those who are convicted of any offense requiring mandatory revocation of driving privileges who fail to present certification that "all fines and costs have been paid to the court of jurisdiction." *Id.*, 55-50-303(a)(7); (b)(1), (2) (1997). The department is required to examine applicants for reinstatement of canceled, suspended or revoked licenses when the license "has been expired in excess of one (1) renewal cycle." *Id.*, § 55-50-322(a), (e) (1997). The Code establishes a schedule of fees that the department must charge for issuing driver's licenses. *Id.*, § 55-5-323 (Supp. 2000). The department is authorized "to impose restrictions suitable to the licensee's ability" to drive. *Id.*, § 55-50-331(d) (Supp. 2000). The department is required to "forthwith revoke" the license of any driver upon receiving a record of a final conviction of enumerated offenses, including "[a]ny felony in the commission of which a motor vehicle is used." *Id.*, § 55-50-501(a) (1998).

We glean from these statutes a distinction between, on the one hand, the judicial functions of declaring and terminating a person's status an a MVHO and, on the other hand, the administrative function of assuring fulfillment of the technical requirements for obtaining a driver's license and, ultimately, issuing a license. The legislature has entrusted to the courts the power and duty to adjudicate a person's MVHO status. It has entrusted to the executive branch, through the Department of Safety, the responsibility for determining that only qualified persons are licensed to operate motor vehicles.

On April 9, 1999, more than three years after the lower court declared the defendant to be an MVHO, that court decreed that the defendant's driving privileges be restored to "all privileges of operating a motor vehicle" on the public highways "upon the payment of the fees as required by the rules and laws of the state. . . for such purposes." In that order, the lower court found that the defendant had paid his "fines for past violations," and we conclude that the provision that the defendant be restored to driving privileges "upon the payment of the fees as required" refers merely to the fees scheduled in Code section 55-50-323, which the department is obligated to collect before issuing a new driver's license. We discern from this order that the court was discharging its judicial function of terminating the defendant's MVHO status and was properly deferring to the department to perform its administrative duty to collect the fees, assure compliance with all technical requirements, and issue in due course a new license to the unlicensed defendant. In part because these latter functions are by statute executive and administrative and are independent of the court's role pursuant to the MVHO law, we are unpersuaded by the state's argument that the court order in question established conditions precedent to a judicial termination of the MVHO status. In our view, the administrative function of license issuance cannot be performed until the court adjudicates an end to the MVHO status.

Even though the state posits that the second April 9, 1999 order established at most a thirty-day hiatus in the defendant's MVHO status, we believe that this second order is congruent with our interpretation of the first order. We infer from the wording of the second order that the court recognized the defendant's concern that his transition from a former MVHO to a duly licensed driver would be delayed while he attempted to get a new license issued. In the second order, the court addressed this delay by attempting to grant an interim license or privilege to drive for a period of thirty days. It is immaterial whether the court had the authority to grant this privilege or that the thirty day period expired before August 16, 1999, when the defendant was arrested. The court had already terminated his MVHO status, and the second order merely attempted to address his unlicensed status. Clearly he was unlicensed on August 16 when he was caught driving a truck, but he was also no longer an MVHO.

Thus, because the MVHO order did not "remain[] in effect" on August 16, 1999, the proof as a matter of law did not establish a violation of Code section 55-10-616. The conviction must be reversed and the charge dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-5-